IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SCOTT MICHAEL DITTMAR

     Plaintiff,

 v.

JOHN HARMON, et al.,

     Defendants.

CIVIL ACTION
NO. 19-1537

## OPINION

Slomsky, J.              March 8, 2021

TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................................. 1

II. BACKGROUND ............................................................................................................... 1

 A. The SAC and Plaintiff's Claims Against NCP Defendants ................................... 1

 B. NCP Defendants' Motion to Dismiss the SAC ..................................................... 4

III. STANDARD OF REVIEW ............................................................................................... 6

IV. ANALYSIS ....................................................................................................................... 7

 A. Plaintiff Cannot Assert His Claims Against NCP Defendants in
  Their Official Capacity ......................................................................................... 8

 B. The SAC Fails in Part to Allege Sufficient Facts to State Claims
  Upon Which Relief Can Be Granted ..................................................................... 9

  1. Plaintiff's First Amendment Claim Fails Because He Does Not Allege NCP
   Defendants' Personal Involvement in the Claim ........................................... 9

  2. Plaintiff's Failure-to-Protect Claim is Insufficiently Pled for Several Reasons ........... 10

   i. Plaintiff Does Not Allege That He Was Subjected to a Substantial Risk
    of Serious Harm ....................................................................................... 10

ii.     Plaintiff Does Not Allege That Defendants Cruz, Henninger, or Rinker Were Personally Involved in Failing to Protect Him ......................................................... 14

3.     Plaintiff's Claim of Failure to Provide Adequate Medical Treatment is Insufficiently Pled Because He Does Not Show Deliberate Indifference to His Medical Condition ................................................................................................... 14

4.     Plaintiff Properly States a Claim for Retaliation Against Defendant Harmon ............. 16

C.   Plaintiff Will Be Given Leave to Amend the SAC and File a Third Amended Complaint ........................................................................................... 18

V.   CONCLUSION ......................................................................................................... 19

## I.      INTRODUCTION

This action arises out of allegations by Plaintiff Scott Michael Dittmar ("Plaintiff"), a pretrial detainee at Northampton County Prison ("NCP"), that his First and Eighth Amendment rights have been violated and that he was retaliated against during his confinement.  Plaintiff claims that four NCP employees violated his right to pray, failed to protect him from an inmate's threats, failed to provide him with medical treatment, and retaliated against him for requesting a change in his housing.  (See Doc. No. 11 at 3-4.)  On April 10, 2019, Plaintiff commenced this action and following dismissal of his First Amended Complaint ("FAC") (Doc. No. 6), he filed a Second Amended Complaint ("SAC") (Doc. No. 11) naming the four NCP employees as Defendants.[1]

On July 31, 2019, Defendants filed a Motion to Dismiss the SAC under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  (See Doc. No. 24.)  On August 27, 2020, Plaintiff filed a Response in Opposition to Defendant's Motion to Dismiss.  (See Doc. No. 37.)  On November 6, 2020, a hearing was held on the Motion.  (See Doc. No. 39.)  The same day the Court entered an Order (Doc. No. 40) permitting Plaintiff to file a second Response, and he subsequently did so.  (See Doc. No. 42.)  For the reasons set forth below, Defendant's Motion to Dismiss (Doc. No. 24) will be denied in part and granted in part, and Plaintiff will be afforded the opportunity to amend the SAC by filing a Third Amended Complaint.

## II.     BACKGROUND

### A.      The SAC and Plaintiff's Claims Against NCP Defendants

On April 10, 2019, Plaintiff initiated this action by filing a Complaint against NCP, the "Department of Corrections Administration," and the "Classification Department" pursuant to 42

---

[1]   The SAC lacks clarity and specificity such that the Court struggled to discern which claims Plaintiff asserts against which Defendants.  This Opinion is the result of a concerted effort to identify Plaintiff's claims and Defendants named in each claim.

U.S.C. § 1983.  (See Doc. No. 2.)  The Court dismissed the Complaint without prejudice for failing to state a claim against these three parties because they are not persons subject to suit under federal civil rights laws.  (See Doc. No. 5 at 2.)  In so doing, the Court granted Plaintiff leave to amend his complaint to "nam[e] the person or persons responsible for the alleged violation of his rights, or a proper legal entity subject to suit under § 1983."  (Id.)  Plaintiff then filed the FAC (Doc. No. 6) naming only NCP as a Defendant.  (See id.)  In a five-page Opinion, the Court dismissed the FAC without prejudice for failing to state a plausible claim but again granted Plaintiff leave to amend the FAC to remedy its defects.  (See Doc. Nos. 9; 10.)

On May 10, 2019, Plaintiff filed the SAC (Doc. No. 11), the operative Complaint here, against four NCP employees: Hearing Examiner John Harmon, "Lieutenant Cruz,"[2] Lieutenant Rachel Henninger, and Lieutenant Chad Rinker (collectively "NCP Defendants").  (See id. at 2-3.)  In the SAC, Plaintiff asserts the following two claims against NCP Defendants: (1) "violating [his] right to . . . religious prayer with [his] Muslim brothers[,]"; and (2) "violating [his] right to safety . . . ."  (Id. at 3.)

The SAC also contains two additional claims against Defendant Harmon: (3) failing to provide Plaintiff with adequate medical treatment; and (4) retaliating against him for filing numerous requests to change his housing.[3]  (See id. at 4, 7.)  The alleged retaliation was in the form of Plaintiff receiving a write-up[4] and placement in Disciplinary Segregation.  (See id.)

---

[2]   The first name of Lieutenant Cruz is not given by the parties.

[3]   In the SAC, Plaintiff asserts that NCP Defendants violated his right to pray and his right to safety.  (See Doc. No. 11 at 3.)  In the Motion to Dismiss, NCP Defendants note that the SAC, when read broadly, contains the additional claims only against Harmon for failing to provide adequate medical treatment and retaliation.  (See Doc. No. 24 at 4.)  The Court agrees with NCP Defendants and will consider these two additional claims against Harmon.

[4]   Neither Plaintiff nor NCP Defendants explain how the write-up is a form of a sanction.

Because the SAC is an amalgam of independent allegations, the facts supporting each of the four claims are best discussed separately.

First, Plaintiff alleges that on May 7, 2019, an unnamed lieutenant prohibited him from "pray[ing] with [his] [M]uslim brothers." (Id. at 4.)  He states this denial occurred during the afternoon, but later that evening a second unnamed lieutenant allowed him to pray with other prisoners.  (See id. at 5.)

Second, Plaintiff claims that NCP lieutenants failed to protect him from a prisoner's threats against Plaintiff and his family.[5]  (See id. at 4.)  He states that an unnamed NCP prisoner, who is "a well[-]known [g]ang member," threatened to kill Plaintiff, his son, and his family.  (Id.)  Without identifying which lieutenants were involved, Plaintiff states that lieutenants in general and Defendant Harmon heard the threats and "were told numerous times" about them but did not take any action in response.  (Id. at 4; see also id. at 5.)  He further explains that "Harmon was told about [the] multiple threats . . . and all the ways the person said he would physically kill" Plaintiff's family and son.  (Id. at 4.)  Because of the threats, Plaintiff claims he suffers from "mental strain[in]g," nightmares, and lack of sleep.  (Id. at 5.)

Third, Plaintiff claims that he was incorrectly "placed on [a] top tier" cell when he was classified as a low tier low bunk inmate due to his seizure condition.[6]  (Id. at 4.)  He avers that

---

[5]  Unlike his First Amendment claim, Plaintiff does not provide specific dates on which the facts giving rise to his other claims occurred.  In the SAC, he lists February 19, 2019 at 7:45 p.m. as the only day and time when the other claims occurred, although they appear to have happened on multiple days.  (See Doc. No. 11 at 5.)  For this reason, the Court cannot discern what actions occurred on February 19, 2019.

[6]  A low tier low bunk designation requires that an inmate be given a bed that is both on the first floor and on the bottom bunk of a bed within the cell.  See Jeffrey Keller, M.D., Sample Guideline: Bottom Bunk Requests, JAIL MEDICINE, (Dec. 6, 2018), https://www.jailmedicine.com/sample-guideline-bottom-bunk-requests/. This designation is

despite Defendant Harmon's knowledge of Plaintiff's low bunk low tier designation, Plaintiff was still placed on a top tier cell.  (See id.)  Plaintiff does not state, however, whether Defendant Harmon or a different NCP employee actually designated him to the top tier.

Finally, Plaintiff avers that Defendant Harmon retaliated against him by sanctioning him for filing numerous requests to change his housing.  (See id. at 4, 7.)  The alleged retaliation was in the form of at least one write-up and placing Plaintiff in Disciplinary Segregation.  (See id.)  Regarding the latter sanction, Plaintiff states in the SAC that he "was placed [i]n Disciplinary Segregation due to harrassment [sic] for dropping to[o] many slips (request[s]) to John Harmon and [Lieutenants] Henninger, Rinker, [and] Cruz."[7]  (Id. at 7.)  Furthermore, in the SAC, Plaintiff alleges that Defendant Harmon also wrote him up for harassment for "asking to be moved off [of] a block [where his] life was put in danger" due to the other inmate's threats against him, his son, and his family.  (Id. at 4.)

**B.     NCP Defendants' Motion to Dismiss the SAC**

On July 31, 2019, NCP Defendants filed a Motion to Dismiss the SAC pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  (See Doc. No. 24.)  In the Motion, Defendants argue, "Plaintiff fails to raise any legally cognizable claim under § 1983."  (Id. at 3.)  In so doing, they make two arguments.  First, they aver that Plaintiff cannot sue them in their official capacity.  (See id. at 14-15.)  Second, they attack the factual sufficiency of Plaintiff's four claims in the SAC.  (See id. at 6-12.)

---

typically given to inmates with medical conditions that make it difficult to climb stairs or increase their risk of falling from a top bunk bed.  See id.

[7]   In his Response in Opposition to the Motion to Dismiss, Plaintiff clarifies that his placement in Disciplinary Segregation was in response to numerous requests to change his housing based on his seizure condition and low tier low bunk designation.  (See Doc. No. 37 at 1.)

Seeking assistance to respond to the Motion to Dismiss, Plaintiff requested appointment of counsel, and on January 23, 2020, the Court held a hearing on the Motion to Dismiss and the Request for Appointment of Counsel.  (See Doc. Nos. 24; 25; 30.)  On January 24, 2020, the Court ordered the Clerk of Court to refer Plaintiff's case to the Civil Rights Panel to determine if a lawyer on the panel would agree to represent Plaintiff.  (See Doc. No. 31.)  On July 7, 2020, the Civil Rights Panel Administrator informed Plaintiff that his case "has been waiting on the . . . Panel for 4 months . . . [and] no lawyer has agreed to represent [him] in this case." (Doc. No. 33.)  On July 24, 2020, Plaintiff requested his case be removed from the Panel and affirmed his intent to proceed pro se.  (See Doc. No. 35.)

The Court then ordered that Plaintiff respond to the Motion to Dismiss.  (See Doc. No. 36.) On August 27, 2020, Plaintiff filed a single-page letter that the Court considers a Response in Opposition to the Motion to Dismiss.  (See Doc. No. 37).  In the Response, Plaintiff clarifies the reasons for his numerous requests to change his housing.  (See id. at 1.)  He reiterates that Defendant Harmon placed him in Disciplinary Segregation as punishment for harassment for requesting accommodations for his seizure condition.  (See id.)  Plaintiff also notes that he requested to change his housing because of the other inmate's threats against him and his family. (See id.)

On November 6, 2020, the Court held a second hearing on the Motion to Dismiss.  (See Doc. Nos. 39; 41.)  After this hearing, the Court granted Plaintiff a second opportunity to respond to the Motion, and on December 7, 2020, Plaintiff filed a second single-page letter Response.  (See Doc. Nos. 40; 42).  In the second Response, Plaintiff does not substantively respond to the Motion to Dismiss and only requests that his case not be dismissed.  (See id. at 1.)

## III.     STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009).  After Iqbal, it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  Id. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting Iqbal, 556 U.S. at 678).  Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully."  Id. (quotation marks omitted) (quoting Iqbal, 556 U.S. at 678).  Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (quotation marks omitted) (quoting Iqbal, 556 U.S. at 678).

Applying the principles of Iqbal and Twombly, the Third Circuit Court of Appeals in Santiago v. Warminster Township, 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a Rule 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (alteration in original) (quoting Iqbal, 556 U.S. at 675, 679).  The inquiry is normally broken into three parts: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the

complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679 (second alteration in original) (citation omitted).  The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id.

## IV.   ANALYSIS

NCP Defendants argue that the SAC should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim for which relief can be granted.  (See Doc. No. 24.) In the instant Motion, NCP Defendants argue, "Plaintiff fails to raise any legally cognizable claim under § 1983."  (Doc. No. 24 at 3.)  As noted previously, in so doing, they make two arguments. First, NCP Defendants aver that they cannot be sued in their official capacity.  (See id. at 12-15.) Second, they attack the factual sufficiency of Plaintiff's four claims made against them in their individual capacity.  (See id. at 6-14.)

Initially, the Court will address whether Plaintiff can bring his claims against NCP Defendants in their official capacity.  Next, the Court will analyze whether Plaintiff states sufficient facts in the SAC to establish his claims against NCP Defendants in their individual capacity.

A.      **Plaintiff Cannot Assert His Claims Against NCP Defendants in Their Official Capacity**

In the SAC, Plaintiff names Hearing Examiner Harmon, Lieutenant Cruz, Lieutenant Henninger, and Lieutenant Rinker as Defendants.  (See Doc. No. 11 at 2-3.)  Plaintiff does not state whether he brings his claims against them in their individual or official capacity.  Plaintiff cannot bring claims against NCP Defendants in their official capacity, however, because an official capacity suit can only be brought against a governmental entity and not the officers of the entity.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978).  For this reason, Defendants have moved to dismiss the claims brought against them in their official capacity.

When a plaintiff alleges a deprivation of his constitutional rights, there are distinct "practical and doctrinal differences" between suing defendants in their personal and official capacities.  Kentucky v. Graham, 473 U.S. 159, 165 (1985).  In Kentucky v. Graham, the United States Supreme Court clarified these differences:

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law.  See, e.g., Scheuer v. Rhodes, 416 U.S. 232, 237-238, 94 S.Ct. 1683, 1686-1687, 40 L.Ed.2d 90 (1974).  Official-capacity suits, in contract, "generally represent only another way of pleading an action against an entity of which an officer is an agent."  [Monell, 436 U.S. at 690 n.55.]  As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.  [Brandon v. Holt, 469 U.S. 464, 471-72 (1985)].  It is *not* a suit against the official personally, for the real party in interest is the entity.  Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.

473 U.S. at 165-66 (footnote omitted).

Here, in the SAC, Plaintiff sues the four NCP Defendants.  (See Doc. No. 11 at 2-3.)  Because an official capacity suit is "to be treated as a suit against [a] [government] entity," Plaintiff cannot sue the individual NCP Defendants, who are not governmental entities, in their official

capacity.  <u>Graham</u>, 473 U.S. at 166.  For this reason, the Court will construe the SAC as if the claims were brought against NCP Defendants in their individual capacity, and to the extent claims are brought against them in their official capacity, such claims will be dismissed.

**B.     The SAC Fails in Part to Allege Sufficient Facts to State Claims Upon Which Relief Can Be Granted**

The SAC will be dismissed in part for failure to state a claim because Plaintiff does not allege sufficient facts to support his First Amendment, failure-to-protect, and failure to provide adequate medical treatment claims. He does provide, however, sufficient facts to support a retaliation claim against Defendant Harmon.  In the SAC, Plaintiff contends that NCP Defendants violated his First Amendment right by prohibiting him from praying and his Eighth Amendment right by failing to protect him from an inmate's threats.  (<u>See</u> Doc. No. 11 at 3-4.)  Moreover, when the SAC is read broadly, Plaintiff also claims that Defendant Harmon was deliberately indifferent to his serious medical condition and retaliated against him with a write-up and placement in Disciplinary Segregation.  (<u>See</u> <u>id.</u> at 4, 7; <u>see</u> <u>also</u> Doc. Nos. 24 at 4; 37 at 1.)  Each of Plaintiff's four claims will be discussed seriatim.  In sum, only the retaliation claim will survive dismissal under Rule 12(b)(6).

**1.     Plaintiff's First Amendment Claim Fails Because He Does Not Allege NCP Defendants' Personal Involvement in the Claim**

Plaintiff's claim under the First Amendment to the United States Constitution that he was prohibited from praying is insufficiently pled because he does not allege that the four NCP Defendants were involved at all in this alleged deprivation.  In the SAC, Plaintiff merely alleges that his First Amendment right to pray was violated by an unknown lieutenant who did not allow him to pray with other inmates.  (<u>See</u> Doc. No. 11 at 4-5.)  Plaintiff does not state that any of the four NCP Defendants prevented him from praying.

9

"A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . ." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676.  Furthermore, when seeking to impose liability under § 1983 against multiple defendants, "[p]laintiffs must show that each one individually participated in the alleged constitutional violation or approved of it." C.N. v. Ridgewood Bd. of Educ., 430 F.3d 159, 173 (3d Cir. 2005) (citing C.H. v. Olivia, 226 F.3d 198, 201-02 (3d Cir. 2000) (en banc)).  Allegations of participation in or approval of constitutional violations must be pled with "appropriate particularity." Rode, 845 F.2d at 1207.

Here, Plaintiff states that an unnamed lieutenant prohibited him from praying.  (See Doc. No. 11 at 4-5.)  In describing this event, the SAC does not state that any of the four NCP Defendants were personally involved in the alleged incident.  (See id.)  For this reason, Plaintiff fails to state a claim against NCP Defendants for violating his First Amendment right to pray.

### 2.    Plaintiff's Failure-to-Protect Claim is Insufficiently Pled for Several Reasons

Plaintiff's claim for failure-to-protect is insufficiently pled for at least two reasons.  First, he does not allege he was subjected to a substantial risk of serious harm.  Second, he does not describe the personal involvement of Defendants Cruz, Henninger, and Rinker.

### i.    Plaintiff Does Not Allege That He Was Subjected to a Substantial Risk of Serious Harm

First, Plaintiff's failure-to-protect claim fails to state a claim against all four NCP Defendants because he does not allege he was subjected to a substantial risk of serious harm.  In the SAC, Plaintiff states that an unnamed NCP prisoner, who is "a well[-]known [g]ang member,"

threatened to kill Plaintiff, his son, and his family.  (Doc. No. 11 at 4).  Plaintiff alleges that

Defendant Harmon and an unnamed lieutenant heard and were thus made aware of the threats but

did not act in response.  (See id. at 4-5.)  Because Plaintiff avers no more than a general fear of

assault created by an unspecific threat to himself and his family, he has not shown that he was

subjected to a substantial risk of serious harm, and his claim thus fails.  (See Doc. No. 24 at 9.)

As a threshold matter, although sentenced prisoners may bring failure-to-protect claims

under the Eighth Amendment's Cruel and Unusual Punishment Clause, this clause "does not apply

until an inmate has been both convicted of and sentenced for his crimes."  Bistrian v. Levi, 696

F.3d 352, 367 (3d Cir. 2012), abrogated on other grounds by Mack v. Yost, 968 F.3d 311 (3d Cir.

2020).  In Bistrian, the Third Circuit Court of Appeals explained that despite this limitation, pretrial

detainees, such as Plaintiff, are not without recourse for alleged failures to protect them while they

are awaiting trial and sentencing:

> [A]n inmate awaiting sentencing must look to either the Fifth Amendment's or the
> Fourteenth Amendment's Due Process Clause for protection.  We have not yet in a
> precedential opinion recognized that an unsentenced inmate may bring a due
> process-grounded failure-to-protect claim of the sort that a sentenced inmate can
> bring under the Eighth Amendment.  But it is well established that, under the
> Constitution's guarantees of due process, an unsentenced inmate is entitled[,] at a
> minimum, to no less protection than a sentenced inmate is entitled to under the
> Eighth Amendment.

Id. (quotation marks and citations omitted) (second alteration in original).  Thus, although Plaintiff

erroneously contends that his failure-to-protect claim is a violation of his Eighth Amendment

rights, the Court will construe his claim as a violation of his Fourteenth Amendment due process

rights and apply the same standards used in an Eighth Amendment failure-to-protect claim.  See

Thomas v. Cumberland Cnty., 749 F.3d 217, 223 n.4 (3d Cir. 2014) ("This Court has applied the

same standard to a failure-to-protect claim under the Fourteenth Amendment as under the Eighth

Amendment.")

Turning to the substance of Plaintiff's failure-to-protect claim, "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994) (quotation marks and citation omitted).  Recently, in Porter v. Pennsylvania Department of Corrections, the Third Circuit summarized the two-prong test for a failure-to-protect claim:

> To determine whether prison officials have violated the Eighth Amendment, we apply a two-prong test: (1) the deprivation must be "objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities"; and (2) the prison official must have been "deliberate[ly] indifferen[t] to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (internal citations and quotation marks omitted).  An official is deliberately indifferent if he "knows of and disregards an excessive risk to inmate health or safety." Id. at 837, 114 S.Ct. 1970.
>
> . . .
>
> To satisfy the [first] objective prong of this test "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Mammana v. Fed. Bureau of Prisons, 934 F.3d 368, 373 (3d Cir. 2019) (quoting Farmer, 511 U.S. at 834, 114 S.Ct. 1970).
>
> . . .
>
> To satisfy the [second] subjective prong . . . an inmate must show that the prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." [Chavarriaga v. New Jersey Dep't of Corr., 806 F.3d 210, 229 (3d Cir. 2015)] (quoting Farmer, 511 U.S. at 847, 114 S.Ct. 1970) (quotation marks omitted).  The inmate "may demonstrate deliberate indifference by showing that the risk of harm was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past such that defendants must have known about the risk." Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 259 (3d Cir. 2010) (quoting Farmer, 511 U.S. at 842-42, 114 S.Ct. 1970) (internal quotation marks omitted).

974 F.3d 431, 441, 444-45 (3d Cir. 2020) (first and second alteration in original).

Threats of harm from other inmates can satisfy the first prong of a substantial risk of serious harm.  See Bistrian, 696 F.3d at 369-70.  But in showing a substantial risk of serious harm based

on threats, a plaintiff must allege more than "an out-of-the-blue and unadorned 'I'm-in-trouble'

entreaty," id., that may be designed to "feign . . . fear of physical harm simply to manipulate a

transfer," id. at 369 (quotation marks and citation omitted).

For example, in Bistrian, the Third Circuit held that the plaintiff surpassed this threshold.

See id. at 369-70.  There, the plaintiff, who cooperated with the Federal Bureau of Investigation

to intercept notes from other inmates, brought a failure-to-protect claim against prison

investigators after the interception operation failed.  See id. at 358.  Because of this failure, the

targeted inmates learned of the investigation and threatened plaintiff.  See id.  In response, plaintiff

"repeatedly advised . . . the very officials that orchestrated the botched . . . operation" of these

threats, id. at 370 (quotation marks and citation omitted), and the officials took no preventative

measures, see id. at 358.  The Third Circuit found that the threats plausibly established a substantial

risk of serious harm because "[g]iven [the officials'] familiarity with the scheme and the players

involved, it is quite plausible that they knew [plaintiff's] cries for help were legitimate and that he

faced a substantial risk of serious harm."  Id. at 370.

Here, Plaintiff's claim fails because he only avers "an out-of-the-blue and unadorned 'I'm-

in-trouble' entreaty," which is distinguishable from the Bistrian plaintiff's claim.  Id. at 369-70.

In the SAC, Plaintiff only alleges that an unnamed gang member threatened him and his family

and that he told Defendant Harmon and an unnamed lieutenant about the threats multiple times.

(See Doc. No. 11 at 4.)  He does not provide any additional facts that give credence to the threats,

such as that the other inmate is a member of a rival gang or that Plaintiff has a prior history of

conflict with the inmate.  Absent more facts, Plaintiff has not shown that he was subjected to a

substantial risk of serious harm.  Therefore, his failure-to-protect claim will be dismissed for failure to state a claim upon which relief can be granted.[8]

### ii. Plaintiff Does Not Allege That Defendants Cruz, Henninger, or Rinker Were Personally Involved in Failing to Protect Him

Plaintiff also fails to state a failure-to-protect claim against Defendants Cruz, Henninger, and Rinker because he does not allege they were personally involved in the claim.  As discussed above, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs . . . ." Rode, 845 F.2d at 1207.  Allegations of personal involvement must be pled with "appropriate particularity." Id. at 1207.

Here, Plaintiff states that only Defendant Harmon and an unnamed lieutenant, not the three named lieutenants, heard and knew of the other inmate's threats against Plaintiff.  (See Doc. No. 11 at 4-5.)  Similar to his First Amendment claim, because Plaintiff does not state that Cruz, Henninger, or Rinker were personally involved in failing to protect him, this claim fails to state a claim against those three Defendants.

### 3. Plaintiff's Claim of Failure to Provide Adequate Medical Treatment is Insufficiently Pled Because He Does Not Show Deliberate Indifference to His Medical Condition

Plaintiff's claim of failure to provide him with adequate medical treatment also is insufficiently pled because he fails to assert that Defendant Harmon acted with deliberate indifference to his seizure condition.  In the SAC, Plaintiff contends that, despite his low tier low bunk designation because of his seizure condition, he was improperly placed on the top tier.  (See Doc. No. 11 at 4.)  He claims that Defendant Harmon knew of his low tier low bunk designation.

---

[8]  Because Plaintiff's claim fails to meet the first prong of a failure-to-protect claim, the Court need not address also whether Plaintiff establishes the second prong by showing Defendant Harmon was deliberately indifferent to a substantial risk of serious harm.  See Porter v. Pa. Dep't of Corr., 974 F.3d 431, 441 (3d Cir. 2020).

(See id.)  Defendants submit, however, that this claim fails because Plaintiff does not allege that Harmon acted with deliberate indifference to Plaintiff's medical condition.  (See Doc. No. 24 at 10-11.)

The Eighth Amendment's Cruel and Unusual Punishment Clause provides for the "right of a convicted prisoner to receive adequate medical care . . . ."  Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 581 (3d Cir. 2003) (citing Estelle v. Gamble, 429 U.S. 97, 103-04 (1976)).[9]  "[T]o establish a violation of [a plaintiff's] constitutional right to adequate medical care, evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need."  Id. at 582.  A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (quotation marks and citation omitted).  Moreover, deliberate indifference exists if a prison official has knowledge of the inmate's need for medical care and intentionally refuses to provide that care.  See id. at 346.

Here, assuming without deciding that Plaintiff's seizure disorder is a serious medical need, the SAC is devoid of any facts alleging that Harmon was deliberately indifferent to Plaintiff's seizure condition and need for the low tier low bunk designation.  Plaintiff states that he "was

---

[9]   Similar to the failure-to-protect claim under the Eighth Amendment, a failure to provide medical treatment claim applies "only after [the State] has secured a formal adjudication of guilt in accordance with due process of law."  Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 581 (3d Cir. 2003) (alteration in original) (quotation marks and citation omitted).  Despite the inability to bring a claim under the Eight Amendment, a pretrial detainee is entitled to bring a failure to provide medical treatment claim based on a violation of the Due Process Clause of the Fourteenth Amendment, and the same standards used for an Eighth Amendment claim apply.  See id.  The Court will consider Plaintiff's claim for inadequate medical treatment as a claim brought under the Due Process Clause of the Fourteenth Amendment.

placed on top tier when John Harmon knew [Plaintiff] was low bunk low tier for [his] seizure

disorder." (Doc. No. 11 at 4.)  But Plaintiff's mere assertion that Harmon knew of his seizure

condition is not enough to show that Harmon acted with deliberate indifference to this condition.

Plaintiff does not allege facts showing that Harmon was the one who placed him in the high tier

designation, had any control over Plaintiff's housing, or even knew of Plaintiff's allegedly

erroneous housing.[10]  Thus, because the SAC lacks facts showing Defendant Harmon acted with

deliberate indifference, it fails to state a claim against him for failure to provide adequate medical

treatment.[11]

### 4. Plaintiff Properly States a Claim for Retaliation Against Defendant Harmon

Finally, Plaintiff has properly pled a claim for retaliation against Defendant Harmon

because he alleges that Harmon sanctioned him for engaging in constitutionally protected activity.

In the SAC, Plaintiff claims Defendant Harmon wrote him up for harassment and placed him in

Disciplinary Segregation after he repeatedly requested a change in his housing.  (See Doc. No. 11

at 4, 7.)  In the Motion to Dismiss, Harmon submits that Plaintiff's sanctions were not retaliatory

---

[10]  Plaintiff states that Harmon occupies an administrative role at NCP, (see Doc. No. 11 at 2), and NCP Defendants clarify that Harmon's title is "Hearing Examiner" (Doc. No. 24 at 3).  Neither Plaintiff nor Defendants enumerate Harmon's duties and responsibilities as an administrator or hearing examiner.  Further, Harmon's title as an administrator or hearing examiner does not by itself show that he had authority to place Plaintiff on a low tier low bunk bed, had a duty to rectify his allegedly improper placement on a high tier bed, or knew about Plaintiff's placement.

[11]  When discussing his placement on a high tier bed, Plaintiff only mentions Defendant Harmon. (See Doc. No. 11 at 4.)  For this reason, the Court assumes that if Plaintiff intended to bring a failure to provide adequate medical care claim, he only brought it against Defendant Harmon. However, even if Plaintiff intended to bring the claim against all NCP Defendants, it would fail because he does not plead their personal involvement in the decision to place him in the upper bunk or to deny him medical treatment.

because Harmon had a legitimate penological interest in sanctioning Plaintiff for filing his repeated requests.  (See Doc. No. 24 at 11-12.)

An inmate can bring a retaliation claim against government officials for "[g]overnment actions, which standing alone do not violate the Constitution, [but] may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right."  Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000) (quotation marks omitted) (quoting Thaddeus-X v. Blatter, 175 F.3d 378, 386 (6th Cir. 1999) (en banc)).  "A prisoner alleging retaliation must show (1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him."  Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) (alteration in original) (quotation marks and citation omitted).

"[O]nce a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest."  Rauser v. Horn, 241 F.3d 330, 334 (3d Cir. 2001); see also Turner v. Safley, 482 U.S. 78, 89 (1987) ("[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.")  The Third Circuit recently stated, however, that this burden-shifting framework does not apply at the Motion to Dismiss stage:

> But when ruling on a motion to dismiss, a district court must consider only the complaint and its attached documents, see In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1424–25 (3d Cir. 1997) (Alito, J.), and, for that reason, "[i]t makes little sense to apply [the burden-shifting framework] at the pleading stage," Thomas v. Eby,  481 F.3d 434, 442 (6th Cir. 2007). . . .  And in any case, all [plaintiff] was required to allege was that his request for a grievance was a "substantial or

motivating factor" for [the] adverse action against him—not that it was the exclusive factor. <u>Rauser</u>, 241 F.3d at 333 (quoting [<u>Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle</u>, 429 U.S. 274, 287 (1977)]).  Even though [defendant] may ultimately be able to prove that he had a legitimate penological reason for his actions, [plaintiff] pleaded sufficient facts to survive Rule 12(b)(6) dismissal. See [<u>Wisniewski v. Fisher</u>, 857 F.3d 152, 157 (3d Cir. 2017)].

<u>Palmore v. Hornberger</u>, 813 F. App'x 68, 71 (3d Cir. 2020) (first and second alteration in (original).

Here, Plaintiff pled sufficient facts to support a plausible claim for retaliation against Defendant Harmon.  First, Plaintiff states that he engaged in constitutionally protected free speech by requesting a change in his housing.  (<u>See</u> Doc. No. 11 at 4, 7.)  Second, in the SAC, Plaintiff asserts that he suffered adverse actions in the form of a write-up and placement in Disciplinary Segregation.  (<u>See</u> <u>id.</u>)  Third, Plaintiff alleges causal links between his requests and the adverse actions because he submits that Harmon took these actions due to Plaintiff's requests.  Specifically, he states that he "talked with John Harmon and was written up for harrassment [sic] for asking to be moved . . . ," (<u>id.</u> at 4), and "was placed on Disciplinary Segregation due to harrassment [sic] for dropping to[o] many slips (request[s]) to John Harmon," (<u>id.</u> at 7).

Finally, NCP Defendants' argument that the adverse actions taken against Plaintiff were for a legitimate penological interest is premature at the Motion to Dismiss stage.  Although NCP Defendants "may ultimately be able to prove . . . a legitimate penological reason," <u>Palmore</u>, 813 F. App'x at 71, for sanctioning Plaintiff with a write-up and placement in Disciplinary Segregation, at this point Plaintiff has pled sufficient facts in the SAC to survive dismissal of his retaliation claim.

### C.  Plaintiff Will Be Given Leave to Amend the SAC and File a Third Amended Complaint

Even though he has not requested leave to amend his complaint, Plaintiff will be granted leave to amend the SAC and file a Third Amended Complaint ("TAC").  Federal Rule of Civil

Procedure 15(a)(2) states, "a party may amend its pleading only with the opposing party's written consent or the court's leave" and that "[t]he court should freely give leave when justice so requires." The Federal Rules of Civil Procedure do not address the situation here: when a plaintiff does not seek leave to amend a deficient complaint. The Third Circuit has admonished, however, that for civil rights claims, "when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile." Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) (citing Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002)). "[T]hese principles apply equally to pro se plaintiffs and those represented by experienced counsel." Id. at 235-36 (citing Shane v. Fauver, 213 F.3d 113, 116 (3d Cir. 2000)). Further, a court's "obligation to liberally construe a pro se litigant's pleadings is well-established." Higgs v. Att'y Gen., 655 F.3d 333, 339 (3d Cir. 2011).

Here, the Court will grant Plaintiff leave to amend the First Amendment, failure-to-protect, and failure to provide adequate medical treatment claims in the SAC and file a Third Amended Complaint ("TAC"). An amendment would not be inequitable or futile because the SAC does not share the same deficiencies as the original Complaint and FAC, which were not filed against NCP Defendants. But since Plaintiff will be given a third chance to remedy his Complaint, any amendments beyond filing a TAC would be futile. Moreover, because Plaintiff has sufficiently pled a retaliation claim against Defendant Harmon, he need not amend his retaliation claim. Thus, Plaintiff may amend only the three dismissed claims and file a TAC.

## V.    CONCLUSION

For the foregoing reasons, NCP Defendants' Motion to Dismiss the SAC (Doc. No. 24) will be granted in part and denied in part. The Motion will be granted as to Plaintiff's First

Amendment, Failure-to-Protect, and Failure to Provide Adequate Medical Treatment claims, and will be denied as to Plaintiff's Retaliation claim.  Plaintiff will be granted leave to amend the three dismissed claims in the SAC and file a TAC.  An appropriate Order follows.